IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| THE HUB TEXAS LLC a/k/a<br>THE HUB DELAWARE LLC,<br>    Plaintiff,<br><br>v.<br><br>ARCH SPECIALTY INSURANCE<br>CO.,<br>    Defendant. | §<br>§<br>§<br>§<br>§    CIVIL ACTION NO. 5:21-cv-00180-H<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, THE HUB TEXAS LLC a/k/a THE HUB DELAWARE LLC, files this its First Amended Complaint against ARCH SPECIALTY INSURANCE COMPANY, as a matter of due course in accordance with the Court's Scheduling Order [Dkt. No. 22 at 2–3] and, in support of its causes of action, would respectfully show the Court the following:

**I.    PARTIES**

1.    Plaintiff, THE HUB TEXAS LLC a/k/a THE HUB DELAWARE LLC (the "Hub"), owns commercial property made the basis of this suit located at 7320, 7604 and 7610 Milwaukee Ave, Lubbock, Texas in Lubbock County, Texas (the "Property").

2.    Defendant, ARCH SPECIALTY INSURANCE COMPANY ("Defendant") is a foreign entity authorized to engage in the insurance business in the State of Texas and was engaged in the insurance business in this State during all relevant times to this lawsuit. Defendant was duly served and has made an appearance herein. Defendant removed this case to this Court.

## II. JURISDICTION AND VENUE

3. This Honorable Court has personal jurisdiction over Defendant because at all times relevant hereto it acted as an insurance company doing business in the State of Texas and Plaintiff's causes of action arise out of its in-state business activities.

4. At the time this lawsuit was filed and to this day, Plaintiff's members are domiciled in the state of Texas and its Principal place of business in Colorado. Additionally, Plaintiff is organized under the laws of the state of Delaware. Plaintiff is therefore a citizen of Texas, Colorado, and Delaware for diversity purposes. As alleged by Defendant, Defendant is a corporation formed under the laws of Missouri with its principal place of business in Jersey City, New Jersey.

5. Venue is proper in the Northern District of Texas, because the Property at issue is located in this district, the loss occurred in this district, the claims asserted herein arose from one or more acts and/or omissions that occurred in this district, and Defendant has appeared in this Court. More specifically, the Property is located in the Lubbock Division of the Northern District of Texas.

## III. FACTUAL BACKGROUND

6. The Hub is a company that owns the commercial Property that is the subject of this suit.

7. The Hub purchased the Property in 2020 which then, and does now, contain small shops that sell goods and services that are operated by a mix of local owners and national brands.

8. The Hub entered into an agreement with Defendant to pay Defendant premiums in exchange for insurance coverage protecting the Hub's Property.

9. The agreement was drafted by Defendant and assigned Policy Number ESP1001738-00 (the "Policy"). The Policy's effective date was from January 30, 2020 to January 30, 2021 (referred to as the "Policy Period").

10. The Policy covers damage to the Property as a result of hail, wind, and rain.

11. During the Policy Period, a wind, hail, and rain storm swept through Lubbock County, Texas damaging the Hub's Property.

12. The storm caused severe damage to the Property including the roofs and sidewalls of the buildings.

13. The hail strikes caused direct physical damage to the roof membranes, AC units, metal roofs, metal panels, metal rooftop objects, and more.

14. Additionally, wind tore off portions of the sidewalls, damaged AC units, and caused windblown storm debris to hit the roofs and cut and puncture the roof membranes.

15. As a result, the Property sustained significant physical damage.

16. The Hub subsequently filed a claim under the Policy.

17. Defendant assigned the claim, claim number 000013492830 (referred to as the "Claim") and hired Engle Martin & Associates to handle the Claim.

A. **Investigations, Reports, and Denial**

18. On or about June 17, 2020, V'Rett Williams ("Mr. Williams"), Defendant's adjuster with Engle Martin & Associates, visited the Property. Mr. Williams only stayed at the Property for about half an hour.

19. During Mr. Williams' brief visit he observed scraps and marks to the top of the roof, loose AC unit panels, detached parapet wall siding, and hail strikes to metal rooftop objects and the metal roofs.

20. Mr. Williams determined there was covered damage at the Property but recommended a qualified engineer be hired to further evaluate the damage.

21. Soon thereafter, Defendant hired consultant Brett Lochridge ("Mr. Lochridge") with Unified Building Science to inspect the Property despite not being a licensed engineer or licensed insurance adjuster.

22. On or about July 21, 2020, Mr. Lochridge visited the Property. Mr. Williams was also present.

23. While at the Property, Mr. Lochridge and Mr. Williams walked the roofs and acknowledged the contusions along the roof. Additionally, two samples of the roof that measured one foot by one foot each were taken for further analysis.

24. While reviewing damage to Property, Mr. Lochridge and Mr. Williams both agreed that there were rooftop AC units damaged by hail and covered under the Policy. The two also agreed that the exterior coils were so badly damaged the coils could not be combed straight.

25. Mr. Lochridge suggested merely replacing the exterior coils. But coil replacement generally results in inefficient temperature regulation, high electric bills, frequent repairs, and decreased life service because the exterior coils generally are not able to be properly paired with the interior coils. As a result, it is difficult for an AC unit with damaged exterior coils to be returned to its pre-loss condition without a full replacement.

26. Mr. Williams did not perform the necessary research to determine whether simply replacing the exterior coils would actually return the damaged AC units back to their pre-loss condition. Instead, Mr. Williams ignored the issue as to what remedy would actually return the Property back to its pre-loss condition and did so with an intent to minimize payout.

27. Similarly, Mr. Williams also failed to properly apply the Policy to the damage at the Property even after examining all of the evidence of hail damage.

28. Mr. Williams himself, while at the Property estimated more than 15 to 20 hail strikes in a test square on a metal roof at the Property. Additionally, Mr. Williams noted the dents to additional metal rooftop objects on the roof and even acknowledged the fact that Defendant's own investigator, Mr. Lochridge, identified hail damage to the metal roofs and metal rooftop objects.

29. But, despite the substantial amount of evidence that hail at least two inches in diameter fell at the Property and that hail struck the metal roofs at the Property and caused physical damage, Mr. Williams failed to account for all of the damaged metal rooftop objects and damaged metal roofing as being covered under the Policy event though there is no cosmetic exclusion provision. Mr. Williams does not appear to have requested the measurements of the roofs at the Property and failed to check Mr. Lochridge's estimate for accuracy. Mr. Williams blindly applied Mr. Lochridge's estimate to the Hub's deductible without including all the covered metal damage.

30. Mr. Williams was provided with a property condition report from December of 2019 prepared by Larry J. Tanner, a licensed engineer in Texas, which did not record any hail or wind damage at the Property to wall siding or the roofs, or loose AC unit panels as of the date of Larry J. Tanner's November 18, 2019 inspection.

31. Mr. Williams disregarded the property condition report of a licensed engineer that reported the roofs being in good condition just months prior to the storm, and instead attributed the new cuts and punctures to mechanical damage supposedly from maintenance work since the buildings were constructed.

32. Further, Mr. Williams failed to correct some of Mr. Lochridge's primary reasons for why wind supposedly could not have caused rooftop damage. Mr. Lochridge reported finding no loose debris on the roofs at the Property that could have impacted the roof and that there was no evidence of the wall siding detaching from the parapet walls.

33. However, Mr. Williams himself noted during his initial visit to the Property that there was in fact loose debris on the roof and photographed detached wall siding.



34. Mr. Williams failed to correct Mr. Lochridge's findings and allowed the investigation to continue with incorrect facts.

35. On June 1, 2020 and September 29, 2020, the Hub's roofer LBK Roofing ("LBK") examined the roofs at the Property and found linear cuts that appeared to skip along the roof and punctures to the roof membranes, separated parapet walls, and hail strikes to metal roofs, AC units, and the roof membranes. Additionally, LBK took thermal images of the roof membranes that showed moisture intrusion consistent with storm damage.

36. LBK compiled its findings and photographs and produced a report to Defendant on October 2, 2020.

37. On or about October 19, 2020, Mr. Lochridge produced a supplemental report in response to LBK's report. But Mr. Lochridge merely reasserted his original findings and Mr. Williams did not follow up or ask Mr. Lochridge about new facts raised in LBK's report.

38. For instance, despite being presented with new evidence of water intrusion to the roof insulation, Mr. Williams did not ask for additional thermal imaging or LBK for the information Mr. Lochridge claimed was missing in LBK's report on the thermal images.

39. Following Mr. Lochridge's October 19, 2020 report, Mr. Williams appeared to sit on the Claim for months without completing any additionally investigation of the Property, researching the issues, or rendering a decision.

40. Defendant finally issued its decision letter on January 28, 2021, stating the Claim did not rise above the Hub's deductible. However, Defendant did not explain the basis for why the damages were under the Hub's deductible. As just a few examples, Defendant did not explain why the Policy supposedly did not cover all of the damaged metal at the Property, why recent wind damage was not accounted for, or why the hail damage to the Property was not severe enough to be covered.

41. Defendant offered no explanation why the damages were not more than the Hub's deductible and simply attached Mr. Lochridge's report and supplement report to the letter.

**B.    Policy Compliance**

42. The Hub fully complied with all requirements under the Policy to properly notify Defendant of the losses to its covered Property.

### IV.    CAUSES OF ACTION

**A.    Breach of Contract**

43. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 42 of this complaint.

44. Defendant entered into the Policy with the Hub.

45. The Hub's Property sustained damage during the Policy Period as a result of rain, wind, and hail which is a covered cause of loss under the Policy.

46. Defendant has not paid the Hub any of the benefits it is owed under the Policy.

47. Defendant breached the terms of the Policy by wrongfully underpaying the Hub's Claim.

48. As a result of Defendant's breach of the Policy, the Hub has sustained actual damages and has incurred reasonable and necessary attorney's fees to date.

**B.     Insurance Code Violations**

49. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 48 of this Complaint.

*Prompt Payment of Claims Statute*

50. As set forth above, the Hub was insured under the Policy during the Policy Period.

51. During the Policy Period, a wind, rain, and hail storm swept through Lubbock County, Texas and damaged the Hub's Property.

52. As a result, the Hub gave proper notice of a claim under the Policy to Defendant. Further, the Hub provided all requested materials to Defendant including a proof of loss, 2019 property inspection report, and LBK's damages report. The Hub provided all reasonably requested information no later than October 2, 2020.

53. Defendant is under an obligation to promptly pay the Hub's Claim. Defendant was required to pay the Hub's full Claim amount no later than December 1, 2020.

54. Defendant has delayed payment of the Hub's Claim for a time exceeding the period specified by statute by undervaluing damages covered under the Policy and wrongfully denying damages clearly covered under the Coverage Policy.

55. To date, Defendant has not tendered payment for all of the Hub's damages arising out of its Claim with Defendant.

56. The failure of Defendant to pay the full Claim under the statutory time guidelines for accepting or denying coverage constitutes a violation of Article 542.058 of the Texas Insurance Code.

57. As a result of the insurance code violations listed above, the Hub, in addition to the Hub's claim for damages, is entitled to statutory interest and attorney's fees as set forth in Article 542.060 of the Texas Insurance Code.

*541 Insurance Code Violations*

58. Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

59. The Hub is considered a "person" under Texas Insurance Code § 541.002. Likewise, Defendant is engaged in the business of insurance and is thus a "person" under § 541.002.

60. Defendant violated § 541.051 of the Texas Insurance Code by misrepresenting the terms and benefits of Coverage:

   i. When Defendant misrepresented that the Policy did not cover all of the damaged metal at the Property because the damage did not affect the functionality of the roof despite no cosmetic exclusion provision existing in the Policy.

61. Defendant violated § 541.060:

   (a) *541.060(a)(1)-misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue*.

62. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 61 of this Complaint.

63. Defendant has misrepresented the following material facts:

   i. That dented heavy gauge metal and the majority of other dented metal at the Property is not considered direct physical damage covered under the Policy;

  ii. That there is no evidence of wind damage to the roof membranes despite finding damage with characteristics of wind damage at the Property and Mr. Williams himself finding loose debris on the roof, such as AC unit panels, that could cause such damage;

  iii. That the Hub provided no evidence of hail fractures to the roofs when LBK's report photographed hail fractures on the roofs and provided the report Defendant;

  iv. That the Hub provided no evidence of wet materials on the roofs when LBK's report included thermal images of the roofs that showed water intrusion;

  v. That the AC units could be returned to their pre-loss condition by repairing only the coils and that the AC units did not need to be replaced; and

  vi. The reasonable and necessary costs to make repairs and return the Property to its pre-loss condition by stating the cost of repairs for covered damage did not rise above the Hub's deductible when the actual cost to return the Hub's covered damage to its pre-loss condition is substantially more than the Hub's deductible.

64. Each of these acts and omissions, singularly or in conjunction with the others, constituted a violation of Texas Insurance Code § 541.060(a)(1), which proximately caused the Hub damages.

 (b) *§541.060(a)(2)-failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear.*

65. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 64 of this Complaint.

66. Defendant has failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement by:

  i. Recommending a qualified engineer be hired to examine the damage at the Property but then hiring Brett Lochridge who is neither a licensed engineer or insurance adjuster;

  ii. Ignoring evidence of hail indentions to heavy gauge metal on the roof and other metals on the roof and determining the majority of the dented metal at the Property is not covered under the Policy despite no cosmetic exclusion in the Policy;

  iii. Disregarding the December 9, 2019 property condition report created by Larry J. Tanner, a licensed Texas engineer, that did not report hail or wind damage, water intrusion, loose AC unit panels, or detached parapet walls at the Property;

      iv.    Relying on two small roof samples as evidence of no hail damage to the roofs that are over 50,000 square feet combined and not reexamining the Property after LBK's report that photographed hail fractures on the roof;

      v.    Failing to ask LBK for the additional information for its thermal images to properly analyze the photographs and not performing additional thermal imaging investigation or other water intrusion tests following the new evidence;

      vi.    By claiming the roof insulation did not need to be replaced based only on the dryness of the insulation under the two small roof samples taken;

      vii.    Failing to promptly provide a claim decision by taking over 30 days after the initial inspection to issue a decision that the Claim was below the deductible;

      viii.    Not critically reviewing Mr. Lochridge's report and addressing obvious deficiencies from his investigation and contradictory analysis; and

      ix.    Failing to write an estimate that includes all covered damage to the Property when there was clear evidence of obvious damage provided to Defendant.

67. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(2), which proximately caused the Hub damages.

    (c)    ***541.060(a)(3)-failing to promptly provide Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim***.

68. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 67 of this Complaint.

69. Defendant has failed to promptly provide the Hub a reasonable explanation of the basis for Defendant's denial of the claim. Defendant's denial letter was based solely on its outcome-oriented reports which failed to explain why the cuts and punctures to the roof membranes were not wind damage when the characteristics of the damage matched Mr. Lochridge's stated characteristics of wind damage.

70. Defendant also failed to provide any explanation as to how it was able to determine the damage at the Property likely was caused prior to the storm as a result of mechanical damage in

light of the fact that there is a property report by a licensed engineer, dated December 9, 2019, that did not report hail or wind damage, water intrusion, loose AC unit panels, or detached parapet walls at the Property.

71. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(3), which proximately caused the Hub damages.

> (d) *541.060(a)(4) by failing within a reasonable time to affirm or deny coverage of a claim or submit a reservation of rights to Plaintiff.*

72. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 71 of this Complaint.

73. Defendant failed within a reasonable time to affirm or deny coverage by taking months to render a decision letter. Mr. Williams' inspection was on June 17, 2020. There is no reason why Defendant could not issue a decision letter prior to January 28, 2021.

74. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(4), which proximately caused the Hub damages.

> (e) *541.060(a)(7) by refusing to pay Plaintiff's Claim without conducting a reasonable investigation with respect to the Claim*.

75. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 74 of this Complaint.

76. Defendant has refused to pay the Hub's Claim without conducting a reasonable investigation by:

   i. Recommending a qualified engineer be hired to examine the damage at the Property but then hiring Brett Lochridge who is neither a licensed engineer or insurance adjuster;

   ii. Ignoring evidence of hail indentions to heavy gauge metal on the roof and other metals and determining the majority of the dented metal at the Property is not covered under the Policy despite no cosmetic exclusion in the Policy;

    iii.    Disregarding the December 9, 2019 property condition report created by Larry J. Tanner, a licensed Texas engineer, that did not report hail or wind damage, water intrusion, loose AC unit panels, or detached parapet walls at the Property;

    iv.    Relying on two small roof samples as evidence of no hail damage to the roofs that are over 50,000 square feet combined and not reexamining the Property after LBK's report that photographed hail fractures on the roof;

    v.    Failing to ask LBK for the additional information for its thermal images to properly analyze the photographs and not performing additional thermal imaging investigation or other water intrusion tests following the new evidence;

    vi.    By claiming the roof insulation did not need to be replaced based only on the dryness of the insulation under the two small roof samples taken;

    vii.    Failing to promptly provide a claim decision by taking over 30 days after the initial inspection to issue a decision that the Claim was below the deductible;

    viii.    Not critically reviewing Mr. Lochridge's report and addressing obvious deficiencies from his investigation and contradictory analysis; and

    ix.    Failing to write an estimate that includes all covered damage to the Property when there was clear evidence of obvious damage provided to Defendant.

77.    Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(7), which proximately caused the Hub damages.

78.    Defendant violated § 541.061 by making an untrue statement of material fact when asserting that there was no damage to heavy gauge metal at the Property.

**C.    DTPA Violations**

79.    Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 78 of this Complaint.

80.    At all material times hereto, the Hub was a consumer who purchased insurance products and services from Defendant.

81.    Defendant is a "person" as defined by § 17.45 of the Texas Business and Commerce Code.

Case 5:21-cv-00180-H-BQ   Document 23   Filed 04/01/22   Page 14 of 18   PageID 296

82.  Defendant has violated the Texas Deceptive Trade Practices Act by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by the DTPA § 17.50(a)(1)–(3) in that Defendant took advantage of the Hub's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Insurance Code.

83.  Defendant represented to the Hub that it performed a complete, reasonable, and fair evaluation of the Hub's Claim when Defendant had in fact failed to do so through its actions.

84.  Mr. Williams ignored multiple reports that showed a lack of damage prior to the storm and new wind and hail damage to the Property after the storm. Mr. Williams further failed to properly research the proper remedy for damaged AC units, failed to correct the investigator's incorrect factual assertions of a lack of loose debris detached siding, and failed to request additional information to help Defendant fully evaluate the Claim.

85.  As a result, the Hub is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code § 541.152(a)–(b) and reasonable and necessary attorney's fees as allowed by § 17.50 of the Business and Commerce Code.

**D.    Breach of The Duty of Good Faith and Fair Dealing**

86.  Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 85 of this Complaint.

87.  The Hub and Defendant entered into a valid and enforceable insurance policy.

88.  Defendant owed the Hub the common law duty of good faith and fair dealing.

89.  Defendant has breached the common law duty of good faith and fair dealing by:

**Plaintiff's First Amended Complaint**                                                                                             Page 14

      i.      Recommending a qualified engineer be hired to examine the damage at the Property but then hiring Brett Lochridge who is neither a licensed engineer or insurance adjuster;

      ii.     Ignoring evidence of hail indentions to heavy gauge metal on the roof and other metals and determining the majority of the dented metal at the Property is not covered under the Policy despite no cosmetic exclusion in the Policy;

      iii.    Disregarding the December 9, 2019 property condition report created by Larry J. Tanner, a licensed Texas engineer, that did not report hail or wind damage, water intrusion, loose AC unit panels, or detached parapet walls at the Property;

      iv.    Relying on two small roof samples as evidence of no hail damage to the roofs that are over 50,000 square feet combined and not reexamining the Property after LBK's report that photographed hail fractures on the roof;

      v.     Failing to ask LBK for the additional information for its thermal images to properly analyze the photographs and not performing additional thermal imaging investigation or other water intrusion tests following the new evidence;

      vi.    By claiming the roof insulation did not need to be replaced based only on the dryness of the insulation under the two small roof samples taken;

      vii.   Failing to promptly provide a claim decision by taking over 30 days after the initial inspection to issue a decision that the Claim was below the deductible;

      viii.  Not critically reviewing Mr. Lochridge's report and addressing obvious deficiencies from his investigation and contradictory analysis;

      ix.    Failing to write an estimate that includes all covered damage to the Property when there was clear evidence of obvious damage provided to Defendant; and

      x.     Hiring an investigator to investigate the claim in an effort to solely deny or underpay the Hub's Claim, despite clear evidence that a hail and wind storm damaged the roof membranes and other covered property.

90.    Upon information and belief, Defendant's actions were performed without due regard or care for the Claim process and were done intentionally and/or with gross negligence.

91.    Defendant was aware at all times that its actions would result in the denial and/or underpayment of the Hub's Claim and cause extraordinary harm associated with the Hub's Claim.

92. As a result of Defendant's aforementioned acts and omissions, the Hub sustained actual damages.

## V.   ATTORNEY'S FEES

93. Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 92 of this complaint.

94. The Hub engaged the undersigned attorney to prosecute this lawsuit against Defendant and agreed to pay reasonable attorney's fees and expenses through trial and any appeal.

95. The Hub is entitled to reasonable and necessary attorney's fees pursuant to Texas Civil Practice & Remedies Code §§ 38.001–38.003 because the Hub is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

96. The Hub further prays that it be awarded all reasonable attorney's fees incurred in prosecuting its causes of action through trial and any appeal pursuant to §§ 541.152 and 542.060 of the Texas Insurance Code.

97. The Hub further prays that it be awarded all reasonable and necessary attorney's fees incurred in prosecuting the Hub's DTPA causes of action above pursuant to § 17.50(d).

## VI.   CONDITIONS PRECEDENT

98. All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant.

## VII.   DEMAND FOR JURY

99. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff herein requests a trial by jury.

## VIII.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff herein prays that, upon final hearing of the case, it recover actual damages, statutory interest, and treble/exemplary damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Plaintiff be awarded attorney's fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

*/s/Preston J. Dugas III*
Preston J. Dugas III
State Bar No. 24050189
pdugas@dcclawfirm.com

**DUGAS, CHEEK & CIRCELLI, PLLC**
1701 River Run, Suite 703
Fort Worth, Texas 76107
Telephone: (817) 945-3061
Facsimile: (682) 219-0761

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

   I hereby certify that on April 1, 2022, a true and correct copy of the foregoing was served on all counsel of record pursuant to Federal Rule of Civil Procedure 5(b), as follows:

*via electronic service*
Kristin C. Cummings
State Bar No. 24049828
kcummings@zelle.com
Han N. "Hanna" Kim
State Bar No. 24100926
hkim@zelle.com

ZELLE LLP
901 Main Street, Suite 4000
Dallas, Texas 75202-3975
Telephone: (214) 742-3000
Facsimile: (214) 760-8994

**ATTORNEYS FOR DEFENDANT**

                */s/Preston J. Dugas III*
                Preston J. Dugas III